# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| JOHN SAYYAH, et al., : | |
| Plaintiffs, : | Case No. 1:05CV00016 |
| vs. : | District Judge S. Arthur Spiegel |
| | Magistrate Judge Sharon L. Ovington |
| BROWN COUNTY BOARD : | |
| OF COMMISSIONERS, et al., | |
| : | |
| Defendants. | |
| : | |

# REPORT AND RECOMMENDATIONS[1]

## I. INTRODUCTION

Plaintiffs John Sayyah, Brenda Frank, and Robert Rickling bring this case *pro se* against twenty-one named defendants. Plaintiffs' Complaint raises 19 Counts and promises "additional counts will more likely surface, especially as Plaintiffs get fully involved in and during the discovery process." (Doc. #1 at p. 35).

The case is before the Court upon a Motion to Dismiss filed by seven Judicial Officers of the State of Ohio (Doc. #12), Plaintiffs' Memorandum in Opposition (Doc. #30), the State Judges' Reply (Doc. #31), and Plaintiffs' Motion for Leave of Court to Answer the 04/04/05 Reply of the State Judges (Doc. #33). In the absence of prejudice to the State Judges, Plaintiffs' Motion for Leave to Answer, which is better characterized as a Supplemental Reply, will be

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

granted and accepted as filed. Plaintiffs' additional arguments in their Supplemental Reply have been fully considered when resolving the pending Motion to Dismiss.

**II.  THE COMPLAINT**

Plaintiffs' Complaint concerns events surrounding Plaintiff Sayyah's efforts to speak out against certain public officials in connection with an alleged scheme to defraud the State of Ohio and the federal government out of one or more low-cost loans. The fraudulent scheme was allegedly perpetrated by Defendants including Thomas Joyce, a Trustee of the Waynoka Regional Water and Sewer District ("WRWSD"). (Doc. #1 at ¶30). According to Plaintiffs, Defendant Joyce, an elected public official, engaged in an effort to harm Plaintiffs and other Waynoka property owners by lying and making false public statements to convince them that one or more low-cost loans "did not need to be paid back, thus would not cost them one red penny...." *Id*. Plaintiffs further allege:

> Then, as court documents will attest, with the full cooperation of [the State Judges]..., with little or no concern [Defendants] Joyce and Hunt did their dastardly level best to deny Plaintiff Sayyah free and unbiased access to the court, with the purpose of denying him procedural due process....

*Id*.

The Complaint also claims that Defendants violated the Racketeering Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1503 and 1961(1), based on predicate acts of mail fraud in violation of 18 U.S.C. §1341. *Id*. at ¶¶31-35, 143-44. Plaintiffs also raise civil RICO claims. *Id*. at ¶¶31-35, 145.

In a section of their Complaint titled "NATURE OF THE CASE," Plaintiffs state:

> Plaintiffs bring this case for numerous violations of their due process rights under the Fourteenth Amendment to the U.S. Constitution and for

>obstruction of justice, in which each named Defendant conspired among themselves and each other under color of law and their specific offices to undermine, deny, delay, prevent, derail, and/or discourage Plaintiffs from their lawful right to sue for damages to recover losses due to, among other things, theft; theft in office; theft by deception; embezzlement, illegal real estate scams; federal and state grants and low cost loan scams; illegal gambling; fraud upon the State of Ohio in multi-millions of dollars; fraud upon the U.S. Government in multi-millions of dollars; fraud upon the 2800 [Waynoka] property owners in multi-millions of dollars; fraud on the part of the [Defendant] Commissioners and [Defendant] Beasley in the establishment of an Ohio Political Subdivision WRWSD in order for the criminal enterprise to steal multi-millions of dollars in a fraudulent scam using WRWSD's ability to charge fees, dues and assessment, fraud in general; and 'fraud upon the court' to name just a few of the many illegal activities of said criminal enterprise.

(Doc. #1 at ¶32).

Plaintiffs' Complaint contains a section titled "SPECIFIC ALLEGATIONS." Representative of Plaintiffs' "SPECIFIC ALLEGATIONS" are paragraphs 43 and 44. Plaintiffs allege in paragraph 43 that the State Judges and other Defendants "did intentionally and maliciously engage in patterns of racketeering activities, in which they entered into a conspiratorial 'meeting of the minds' to practice dishonesty and deception with the intent to use the courts as a racketeering enterprise to obstruct justice, to cover up crimes, in order to get 'certain' political friends 'off the hook,' especially the [Defendant] Commissioners and [Defendant] Beasley."

Plaintiffs allege in paragraph 44 that the State Judges "entered into an unlawful and illegal racketeering conspiracy to inflict upon Plaintiffs severe economic hardship and emotional distress in a dastardly and evil scheme to impair, obstruct and discourage Plaintiffs from investigating and conducting judicial activism in their effort to stamp out corruption, scams and crimes by means of state and federal judicial systems."

Plaintiffs also describe numerous civil cases they have filed in the Brown County, Ohio

Court of Common Pleas. *Id*. at ¶ 58-62, 79-82. For example, Plaintiffs stated, "On October 21, 2002, Plaintiffs filed a Complaint for Declaratory Judgment and Injunctive Relief against Waynoka Regional Water & Sewer Districts..., an Ohio Political Subdivision, for alleged wrongdoings, scams, tampering, and fraud...." *Id*. at ¶80.

As to their specific Claims for Relief, Plaintiffs list the following Counts: "Violation of a Federal Constitutional Right" (First Amendment); "Fraud"; "Common Law Fraud and Deceit"; "Fraud upon the Court"; "Fraudulent Conspiracy"; "Civil Rights"; "Obstruction of Justice"; "Cover Up of Wrongdoings and Misdeeds"; "Professional Misconduct"; "Judicial Misconduct"; "Refuse to Recuse"; "Failed to Grant Writs of Mandamus"; "Violations of Equal Access to State Courts"; "Violations as Federal Judicial Officers"; "Violations of the Bill of Rights"; "Violation of Property Interests"; and violations of RICO. (Doc. #1 at pp. 32-33).

Plaintiffs seeks an award of compensatory and punitive damages against each Defendant – including the State Judges – equaling $1,000,000.00. Plaintiffs also seek Writs of Mandamus, Injunctive Relief, and Declaratory Relief, an award of litigation costs, and that "[a]ll issues of immunity ... be resolved on briefs and arguments as presented by any and all sides, if deemed proper and just under federal controlling laws." *Id*. at p. 35.

## III. MOTIONS TO DISMISS

In ruling on a Motion to Dismiss for failure to state a claim upon which relief may be granted, the factual allegations in the Complaint must be taken as true and construed in a light most favorable to the plaintiff. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). Because Plaintiffs bring this case *pro se*, the Court liberally construes their allegations in their favor. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Williams v. Browman*, 981 F.2d 901, 903 (6th Cir.

1992). "A *pro se* Complaint is held to an especially liberal standard, and should only be dismissed for failure to state a claim if it appears 'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000)(quoting in part *Estelle*, 429 U.S. at 106).

The Court "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. State of Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). Indeed, a Motion to Dismiss is often a proper procedural device for resolving pure questions of law. *E.g., Brookings v. Clunk*, 389 F.3d 614, 617-30 (6th Cir. 2004).

## IV. THE STATE JUDGES' MOTION TO DISMISS IS WELL TAKEN

### A. Absolute Immunity – Monetary Damages

The State Judges contend that Plaintiffs' federal constitutional and statutory claims against them must be dismissed because absolute immunity bars Plaintiffs from obtaining monetary damages under 42 U.S.C. §1983.

"The availability of absolute judicial immunity in the context of a Rule 12(b)(6) motion to dismiss presents a question of law...." *Brookings*, 389 F.3d at 617. The State Judges, as the proponents of absolute immunity, bear the burden of establishing that such immunity is warranted. *Id*. (citations omitted).

"Under 42 U.S.C. §1983, state actors are prohibited from violating the civil rights of others." *Terrance v. Northville Regional Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002).[2]

---

[2] Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights,

"As a general rule, judges are immune from suits for money damages.  The Supreme Court has specifically held that state judges are absolutely immune from liability under ... §1983." *Barrett v. Harrington*, 130 F.3d 246, 254 (6th Cir. 1997).  Absolute immunity applies when judges engage in "paradigmatic judicial acts, or acts of actual adjudication, *i.e*., acts involved in resolving disputes between parties who have invoked the jurisdiction of the court."  *Barrett*, 130 F.3d at 254.  "Provided that they do not engage in non-judicial acts or act in the clear absence of all jurisdiction, judges presiding over courts of general jurisdiction are immune from suits for damages even if they act erroneously, corruptly or in excess of jurisdiction."  *King v. Love*, 766 F.2d 962, 965 (6th Cir. 1985).  "A judge acts in the clear absence of all jurisdiction if the matter upon which he acts is clearly outside the subject matter jurisdiction of the court over which he presides."  *King*, 766 F.2d at 965.

Absolute immunity shields the State Judges from Plaintiffs' §1983 claims for money damages.  Plaintiffs allege that the State Judges conspired with each other and with other Defendants to delay, to cover-up, and to corrupt justice in connection with Plaintiffs' state cases.  (Doc. #1 at ¶50).  Plaintiffs further allege that the State Judges subverted their right to a just and speedy trial by jury, *Id*. at ¶51; violated their constitutional right to due process, *Id*.; failed to prevent threats to proper social well being and cheated Plaintiffs out of their right to honest dealings in violation of their constitutional rights, *Id*. at ¶52; concocted schemes and scams to prevent Plaintiffs from obtaining a trial on the merits by the unlawful use of *ipso facto* bench

---

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

trials, *Id*. at ¶53; used their positions as Judicial Officers to coverup wrongdoings and criminal activities, *Id*. at ¶54; failed to rule on pending motions or matters in Plaintiffs' cases, *e.g., Id*. at 61; and violated their rights by dismissing or denying their Motions, Petitions, and arguments, *e.g., Id*. at 65, 70, 72, 74, 76.  These allegations concern paradigmatic judicial acts because they focus on the State Judges' acts of actual decision-making during Plaintiffs' state civil cases.  Although Plaintiffs are extremely dissatisfied with the State Judges' rulings, their constitutional and statutory claims describe core judicial acts in their state cases and fail to indicate an act or omission by the State Judges in a non-judicial role.  *See Brookings*, 389 F.3d at 618 ("in determining whether an act is 'judicial,' the court must assess whether the parties dealt with the judge in his or her judicial capacity....").  Absolute immunity therefore bars Plaintiffs' federal constitutional and statutory claims for monetary damages.  *See Id*.; *see also Barrett*, 130 F.3d at 254.

Accepting Plaintiffs' most serious allegations as true – that the State Judges schemed with each other and other Defendants in violation of Plaintiffs' federal constitutional and statutory rights – these allegations are grounded on the State Judges' rulings, or failure to rule, in Plaintiffs' state cases.  These allegations at most indicate erroneous or corrupt judicial conduct, which fail to penetrate the shield of absolute immunity.  *See Cooper v. Parrish*, 203 F.3d 937, 945 (6th Cir. 2000)(absolute immunity bars claims against judge who improperly engaged in *ex parte* contact with prosecutors, giving them legal advice on how to improve their case); *see also King*, 766 F.2d at 965.

Neither Plaintiffs' Complaint nor their Memorandum in Opposition to the State Judges' Motion to Dismiss nor their Supplemental Reply describe an extra-jurisdictional act or decision

by the State Judges. Plaintiffs' Complaint instead emphasizes their dissatisfaction with the State Judges' acts or omissions during their state cases. A review of Plaintiffs' descriptions of their state cases reveals that they sought to invoke the State Judges' jurisdiction over their claims. *See* Doc. #1 at ¶¶ 58-62, 79-82. Plaintiffs have therefore repeatedly described a jurisdictional reality in their state cases that supports the application of absolute immunity in the present case. *See Id*.

In addition, for the above reasons, absolute immunity bars Plaintiffs' civil RICO claims for monetary damages against the State Judges. *See Cullinan v. Abramson*, 128 F.3d 301, 307-08 (6th Cir. 1997).

Accordingly, absolute immunity bars Plaintiffs from recovering monetary damages against the State Judges based on §1983 claims and civil Rico claims.

**B.     Absolute Immunity – Injunctive and Declaratory Relief**

The State Judges contend that absolute immunity bars Plaintiffs' claims for injunctive and declaratory relief. This contention is well taken.

The Federal Courts Improvement Act of 1996 (Public Law 104-317, Oct. 19, 1996), amended §1983 to prevent federal courts from enjoining a state judge for any taking any act, or any omission in his or her judicial capacity unless (1) a declaratory decree was violated or (2) declaratory relief was unavailable. *See supra*, n.2. Plaintiffs' Complaint does not allege that the State Judges violated a declaratory decree or that declaratory relief was unavailable to Plaintiffs. Consequently, neither of §1983's exceptions to absolute immunity applies in this case.

Section 1983, moreover, does not specifically authorize claims seeking declaratory relief. Instead, §1983 "implicitly recognizes that declaratory relief may be available against state judges in some circumstances, and then limits the availability of injunctive relief to circumstances in

which declaratory relief is unavailable or inadequate." *Brandon E. v. Reynolds*, 201 F.3d 194, 197-98 (6th Cir. 2000)(emphasis added). Determining whether declaratory relief is available on a specific claim against a state judge turns on whether the state judge is a proper party under §1983. *Id*. at 198. To be a proper §1983 party, a state judge must act in his or her non-judicial role. *Id*. at 198-99 (discussing *In re Justices of the Supreme Court of Puerto Rico*, 695 F.2d 17 (1st Cir. 1982)). When – as in the instant case – the §1983 claims are based on judicial or adjudicative acts, neither declaratory nor injunctive relief is available. *See Id*. at 198-200.

Accordingly, absolute immunity bars Plaintiffs' federal constitutional and statutory claims against the State Judges for declaratory or injunctive relief.

### C. The *Rooker-Feldman* Doctrine

The State Judges contend that this Court lacks subject matter jurisdiction over Plaintiffs' Complaint under the *Rooker-Feldman* doctrine because Plaintiffs' claims are inextricably intertwined with rulings by the State Judges in Plaintiffs' state cases.

"The *Rooker-Feldman* doctrine ... stands for the proposition that a party aggrieved by a state-court decision, cannot appeal that decision to a district court, but must instead petition for a writ of certiorari from the United States Supreme Court." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004)(citations omitted). "The purpose of the doctrine is to prevent 'a party losing in state court ... from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claims that the state judgment itself violates the loser's federal rights.'" *Hood v. Keller*, 341 F.3d 593, 597 (6th Cir. 2003)(citations omitted).

"Two categories of claims are barred by *Rooker-Feldman*: those which allege some

injury arising directly from the state court's judgments, and those which allege an injury predating the state-court's judgments but which are still 'inextricably intertwined' with state-court judgments." *Howard v. Whitbeck*, 382 F.3d 633, 639 (6th Cir. 2004).

*Rooker-Feldman* bars Plaintiffs' claims to the extent they allege that the State Judges' rulings violated their federal constitutional and statutory rights, and to the extent they seek a Writ of Mandamus, because these claims arise directly from state-court judgments. *See Whitbeck*, 382 F.3d at 639. Although it appears from Plaintiffs' Complaint that many of their state cases remain pending, *see* Doc. #1 at ¶¶58-82, Plaintiffs' Memorandum in Opposition to the State Judges' Motion to Dismiss clarifies that they seek to challenge at least some Judgments in their state cases. *See* Doc. #30 at p.12. *Rooker-Feldman* bars these claims.

*Rooker-Feldman* also bars Plaintiffs' federal constitutional and statutory claims, because these claims are inextricably intertwined with the State Judges' rulings in Plaintiffs' state cases. This is so because Plaintiffs' potential success on these claims depend on their ability to demonstrate that the State Judges' rulings were wrongly decided.

For these reasons, Plaintiffs' claims against the State Judges fall within both categories of *Rooker-Feldman* cases. *See Whitbeck*, 382 F.3d at 638-39; *see also Baker v. Wayne County Family Independence Agency*, 75 Fed. Appx. 501, 502-03 (6th Cir. 2003)(*Rooker-Feldman* bars the plaintiff's §1983 claims and a claim under Child Abuse Prevention Act challenging, in part, state-court order concerning parental visitation rights).

Accordingly, the *Rooker-Feldman* doctrine bars Plaintiffs' constitutional and statutory claims against the State Judges to the extent these claims challenge the State Judges' rulings and Judgments in Plaintiffs' state court cases.

### D. Plaintiffs' Federal Criminal Claims

Plaintiffs' Complaint fails to state a claim against the State Judges based on violations of federal criminal statutes (RICO and Mail Fraud) because these statutes do not create a private right of action.  *See Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 386 (6th Cir. 1997); *see also Untied States v. Oguaju*, 76 Fed. Appx. 579, 581 (6th Cir. 2003).  Indeed, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."  *Diamond v. Charles*, 476 U.S. 54, 64 (1986).  Plaintiffs therefore lack standing to bring federal criminal charges against the State Judges.  *See Id*. at 64-65.

Accordingly, Plaintiffs' criminal RICO and Mail Fraud claims against the State Judges must be dismissed for failure to state a claim upon which relief could be granted.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The State Judges' Motion to Dismiss (Doc. #12) be GRANTED; and,

2. Plaintiffs' claims against Defendants Thomas Moyer, Alan Corbin, Patrick Foley, William McCracken, Anthony Valen, William Young, and Stephen Powell be DISMISSED under Fed. R. Civ. P. 12(b)(6).

April 29, 2005

                s/ Sharon L. Ovington
                 Sharon L. Ovington
               United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

   Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

   Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).